UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BELGRAVIA HARTFORD CAPITAL, INC.,
and BELGRAVIA HARTFORD GOLD ASSETS
CORP., and BELGRAVIA HARTFORD
HOLDINGS NM, LLC,**

       **Plaintiffs,**

**v.**                                                                          **No. 1:25-cv-00119-JCH-KK**

**STINSON, LLP, PAUL LACKEY, ESQ., and
SNELL & WILMER L.L.P.,**

       **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

On March 6, 2025, Plaintiffs Belgravia Hartford Capital, Inc. ("Belgravia Capital"), Belgravia Hartford Gold Assets Corp. ("Belgravia Gold"), and Belgravia Hartford Holdings NM, LLC ("Belgravia NM") (collectively, "Plaintiffs") filed a *Motion to Remand* (ECF No. 25), arguing that the Court lacks subject matter jurisdiction because there is not complete diversity among the parties. Defendant Snell & Wilmer, L.L.P ("Snell") filed a *Response to Plaintiffs' Motion to Remand and Request for Jurisdictional Discovery* (Dkt. No. 30). Defendants Stinson, LLP ("Stinson") and Paul Lackey ("Lackey") (collectively, the "Stinson Defendants") filed a separate *Response in Opposition to Plaintiffs' Motion for Remand* (Dkt. No. 31), likewise opposing the motion. Plaintiffs filed a *Reply in Support of Motion to Remand* (Dkt. No. 41). Defendants' primary argument in support of denying the motion to remand is that the entity Belgravia NM was formed and fraudulently joined as a sham to defeat diversity, and thus the Court should disregard its citizenship when determining subject matter jurisdiction. Before the Court could reach that issue,

it had to first consider which complaint was the operative complaint at the time of removal, whether Defendants adequately established their own citizenship, and a choice-of-law question that relied on the validity of assignments of legal malpractice claims. The Court, having considered all the issues raised in the motion and briefs and the relevant law, concludes that the motion to remand should be denied.

## I.    FACTUAL BACKGROUND

### A.  Colorado Litigation Resulting in Royalty Agreement

Belgravia Capital and Belgravia Gold, a wholly owned subsidiary of Belgravia Capital, (together "Belgravia") are Canadian corporations with their principal place of business in Canada. (First Am. Compl. ¶ 2, Dkt. No. 20-3.) Belgravia hired Snell around May 8, 2017, as its legal counsel related to Belgravia's investments in mining assets and mineral rights connected to a Polyhalite deposit in Lea County, New Mexico. (*See id.* ¶ 10.) Lawsuits followed in both Colorado and New York. (*See* Settlement Agreement 1, Dkt. No. 30-1.) As part of the settlement of both lawsuits, Snell negotiated and drafted a settlement agreement in September 2017 as well as a Royalty Agreement, granting Belgravia royalty rights tied to the Lea County mine. (*See id.*; First Am. Compl. ¶ 11, Dkt. No. 20-3.)

### B.  New Mexico Litigation to Enforce Settlement Agreement and Royalty Agreement

In September 2021, at Snell's recommendation, Belgravia filed a civil lawsuit in the United States District Court for the District of New Mexico against PolyNatura concerning the Royalty Agreement, *see Belgravia v. PolyNatura*, Case No. 2:21-cv-00918-MIS-JHR ("PolyNatura Lawsuit"). (First Am. Compl. ¶ 15, Dkt. No. 20-3.) Snell served as lead counsel for Belgravia in that case until it voluntarily withdrew as counsel, effective September 7, 2022. (*Id.* ¶¶ 15, 19.) After hiring and firing another law firm (Vinson & Elkins), Belgravia hired Stinson and Lackey as

lead counsel to represent them in the PolyNatura Lawsuit. (*See id.* ¶¶ 17-24.) Lackey appeared in the case in February 2023, then withdrew in May 2023. *See* Notice (Dkt. No. 77) & Order of Withdrawal & Substitution (Dkt. No. 87), *Belgravia v. PolyNatura*, Case No. 2:21-cv-00918-MIS-JHR. The PolyNatura Lawsuit is ongoing. *See Belgravia v. PolyNatura*, Case No. 2:21-cv-00918-MIS-JHR.

### C.  New Mexico Legal Malpractice Lawsuit

On December 23, 2024, Belgravia Capital and Belgravia Gold sued Stinson and Lackey for legal malpractice, negligent and/or intentional misrepresentation, and violation of the Unfair Trade Practices Act in the Second Judicial District Court in the State of New Mexico (hereinafter "Malpractice Lawsuit"). (*See* Compl. Dkt. No. 1-2.) Belgravia's claims arose out of their representation in the PolyNatura Lawsuit. (*See id.* ¶¶ 1, 8) Belgravia alleged that the events giving rise to the action occurred in Bernalillo County, New Mexico. (*Id.* ¶ 6.)

On January 15, 2025, Mehdi Azodi, President of Belgravia Capital, organized Belgravia Hartford Holdings NM ("Belgravia NM") as a New Mexico limited liability company. (Azodi Decl. ¶¶ 2-3, Dkt. No. 25-1.) Belgravia NM has four members: Belgravia Capital, Mehdi Azodi, Ernest Angelo, Jr., and Ava Tahmasebi. (*Id.* ¶ 5.) Mr. Angelo is domiciled in and a resident of Texas, while the other members are domiciled in Canada. (*Id.*; Angelo Decl. ¶¶ 4-8, Dkt. No. 25-2.) Mr. Angelo has a longstanding role as Independent Director of Belgravia Capital, extending "to involvement in its subsidiaries like" Belgravia NM. (Angelo Decl. ¶ 3, Dkt. No. 25-2.)

Mr. Azodi executed a *Partial Assignment of Interest in Claims* (hereinafter, "Partial Assignment"), signing on behalf of the Assignors in his role as President of Belgravia Gold and President & CEO of Belgravia Capital as well as on behalf of the Assignee in his role as Manager of Belgravia NM. (Partial Assignment 1-2, Dkt. No. 25-1 at 7-8 of 8.) In the document, Belgravia

Gold and Belgravia Capital assigned to Belgravia NM a 50% interest "in any and all claims and causes of action or proceedings at law or in equity it now has against Stinson LLP and Paul Lackey arising out of, or related to their representation of", Belgravia as set forth in the Malpractice Lawsuit. (*Id.* at 1.) Belgravia retained the right to "have primary responsibility for prosecuting the Litigation, including making decisions regarding strategy and settlement, in consultation with Assignee." (*Id.*) Belgravia NM agreed to bear 25% of the costs associated with prosecuting the Malpractice Lawsuit. (*Id.*) The Partial Assignment contained a provision stating that the "Assignment shall be governed by and construed in accordance with the laws of the State of New York." (*Id.*) According to Mr. Azodi, the assignment "centralized the management of these claims and allowed for specialized handling, risk management, and to more easily secure funding or allocate resources for legal fees and expenses." (Azodi Decl. ¶ 7, Dkt. No. 25-1 at 2 of 8.) He averred that he took the actions for bona fide business reasons to have a dedicated LLC with its own budget for the case, allowing the organization to manage the expenses and potential recovery in a structured way. (*Id.* ¶¶ 7-8.)

Six days later, on January 21, 2025, Plaintiffs filed in state court a First Amended Complaint adding Snell as a defendant and Belgravia NM as a plaintiff. (First Am. Compl. 1, Dkt. No. 1-4.) According to the amended complaint, Belgravia NM is a domestic limited liability company "and the assignee of certain interests related to the claims asserted in this litigation." (*Id.* ¶ 3.) Plaintiffs served Snell with the amended complaint on January 30, 2025. (Notice of Consent to Removal 2, Dkt. No. 20.)

Within 30 days of service of the initial complaint on Defendants Stinson and Lackey, on February 4, 2025, Stinson and Lackey filed a *Notice of Removal*, seeking to remove the Malpractice Lawsuit to this Court based on diversity jurisdiction. (*See* Notice of Removal 1-2,

Dkt. No. 1.)[1] Prior to removal, Stinson and Lackey had not appeared in the state court proceeding, nor had an attorney for them appeared in the case. (*See id.* & Exhibits attached thereto.)

In support of removal, the Stinson Defendants filed a Declaration asserting that Lackey "is an individual residing in Texas," and that none of the partners comprising the Stinson LLP "resid[e]" in Canada or New Mexico. (Baker Decl. ¶¶ 4-6, Dkt. No. 1-1.) Citing the original complaint, Stinson and Lackey allege that Plaintiffs are citizens of Canada. (Notice of Removal ¶ 9, Dkt. No. 1.) Although the First Amended Complaint was part of the attachments to the Notice of Removal, (*see* Notice, Ex. 3, Dkt. No. 1-4), the contents of the Notice of Removal itself did not mention the citizenship of Belgravia NM or Snell, (*see* Notice 1-7, Dkt. No. 1).

Defendant Snell filed a Notice of Consent to Removal on February 28, 2025, joining in and consenting to removal of this case. (Notice 1-3, Dkt. No. 20.) Snell likewise asserted that removal is proper based on complete diversity, as none of its equity partners reside in Canada or New Mexico. (*Id.* at 4-5; Day Decl. ¶¶ 4-6, Dkt. No. 20-4.) As for the citizenship of Belgravia NM, Snell asserts that it should be disregarded because Belgravia NM was fraudulently joined. (Notice 7-10, Dkt. No. 20.)

### D. Motion to Remand

Plaintiffs filed a *Motion to Remand*, arguing that the case should be remanded to state court due to the Notice being facially defective and to a lack of complete diversity. Plaintiffs assert that the Notice is deficient for two reasons: (1) it relies on the original complaint and fails to mention the citizenship of Belgravia NM; and (2) the Notice merely says that Stinson's partners do not

---

[1] Three days after removing the case, Stinson and Lackey filed a *Motion to Compel Arbitration and Stay Proceedings* (Dkt. No. 3). In January 2024, Stinson filed an arbitration with the American Arbitration Association against Belgravia Capital and Belgravia Gold for unpaid legal work. The parties proceeded in arbitration, with Belgravia filing counterclaims. (*See* Statement of Counterclaims, Dkt. No. 3-3.) Just prior to the scheduled arbitration hearing, Plaintiffs' counsel requested a continuance, and then Plaintiffs filed the instant Malpractice Lawsuit against Stinson and Lackey in state court. (*See* Notice, Dkt. No. 3-4; Emergency Mot., Dkt. No. 3-5). The Court must decide the motion to remand before considering the motion to compel arbitration.

reside in New Mexico or Canada, rather than stating their citizenship. Additionally, Plaintiffs contend that complete diversity is lacking because both Defendant Lackey and Plaintiff Belgravia NM are Texas citizens. Plaintiffs maintain that diversity jurisdiction must be assessed based on the parties and facts at the time of removal, which included a non-diverse plaintiff. Plaintiffs further assert that Belgravia NM was formed, and the assignment made, for legitimate business reasons and is valid under New York law, so Defendants cannot meet the clear and convincing standard to show fraudulent joinder.

Defendants filed responses opposing the motion to remand. As to the facial deficiency arguments, the Stinson Defendants assert that, at the time they filed their Notice of Removal, Plaintiffs had not properly served the First Amended Complaint, so it was not effective, and their removal was properly based on the contents of the original complaint. Moreover, they contend that the evidence they presented that the 312 Stinson partners reside in states other than New Mexico and that none reside in Canada is prima facie evidence of citizenship. Should the Court deem the First Amended Complaint effective, the Stinson Defendants argue that the Court should disregard the citizenship of Belgravia NM, a fraudulently added plaintiff that asserts no claims in the case and is precluded from doing so under New Mexico law. Snell likewise says the motion should be denied because Belgravia's assignment of claims to Belgravia NM was invalid and a sham to defeat diversity, and that any alleged technical defects in the Notice of Removal can be cured.

## II.    STANDARD

Federal courts are courts of limited jurisdiction and there is a presumption against removal. *Dutcher v. Matheson*, 733 F.3d 980, 984-85 (10th Cir. 2013). The removing party has the burden of establishing jurisdiction. *Id.* at 985. Removal statutes must be strictly construed with ambiguities resolved in favor of remand. *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331,

333 (10th Cir. 1982). The removing party bears the burden of establishing the requirements for federal jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001), *overruled on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).

Defendants assert jurisdiction based on diversity of citizenship as provided for in 28 U.S.C. § 1332. When jurisdiction is based on diversity, the removing party must show that there is complete diversity of citizenship between adverse parties and the amount in controversy exceeds $75,000.00. *Dutcher*, 733 F.3d at 987. "Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant." *Id.* Diversity of jurisdiction exists when the civil action is between citizens of different States or citizens of a State and citizens of a foreign state. 28 U.S.C. § 1332(a)(1)-(2).

A court may disregard the citizenship of a party who was fraudulently joined to defeat federal jurisdiction. *See id.* at 987-88. To prove fraudulent joinder, the removing party must show either (1) actual fraud in the plaintiff's pleading of jurisdictional facts, or (2) the plaintiff's inability to establish a cause of action against the non-diverse party. *Id.* at 988. The removing party bears a "heavy burden" to prove fraudulent joinder, and "all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (internal quotations omitted). The removing party must demonstrate that the claim cannot stand "with complete certainty" and "the issue must be capable of summary determination." *Smoot v. Chicago, R.I. & P.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). A court may pierce the pleadings and consider the entire record. *Id.*

### III.    ANALYSIS

A plaintiff may object to removal based on procedural or jurisdictional grounds. *Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1076 (10th Cir. 1999). The Court will first

examine whether there were defects in the removal procedure before turning to whether the Court has subject matter jurisdiction.

### A.  The removal was procedurally proper.

Under 28 U.S.C. § 1446(a), a party seeking to remove a case to federal court must file a notice of removal in the district and division where the state action is pending that contains "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon" the defendant(s). The notice of removal must be filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Each defendant has 30 days after receipt by or service on that defendant of the initial pleading to file the notice of removal. *Id.* § 1446(b)(2)(B). "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." *Id.* § 1446(b)(2)(C).

### 1.  The Stinson Defendants' removal was procedurally proper where it was based on the original complaint, not the amended complaint that was not served on it.

Plaintiffs contend that the Stinson Defendants' Notice of Removal is defective because it relied on an inoperative complaint, and thus, misrepresented which parties were in the case and failed to allege the citizenship of Belgravia NM and Snell. According to the Stinson Defendants, the operative pleading is the initial complaint because, although they were personally served with the complaint, they were not personally served with the amended complaint, as required by New Mexico Rule 1-005. Accordingly, they argue that at the time of removal, the original complaint was the operative one, and the Court should disregard Belgravia NM and Snell for purposes of

diversity jurisdiction. In reply, Plaintiffs do not contest that they did not formally serve the Stinson Defendants with the amended complaint. (*Compare* Def.'s Resp. 8, Dkt. No. 31, *with* Pls.' Reply 2-3, Dkt. No. 41 ("Even if the Amended Complaint was not formally served, it was still properly filed…").) Nevertheless, they assert that the amended complaint was properly filed in the state court case, and that the filing of the amended complaint was enough to supersede the original complaint.

In its jurisdictional and removal statutes, Congress views "amendments as having the potential to alter jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 34 (2025). An amended complaint "can wipe the jurisdictional slate clean, giving rise to a new analysis with a different conclusion." *Id.* Generally, the "amended complaint becomes the operative one; and in taking the place of what has come before, it can either create or destroy jurisdiction." *Id.* at 35. Jurisdiction only follows from the operative pleading. *Id.* This rule applies in both removed and original cases. *Id.* at 38-39. When a plaintiff amends the complaint, even after removal, the federal court's jurisdiction depends on what the new complaint says. *Id.* at 30.

But, for procedural purposes, when does the amended complaint become the operative complaint? Under the federal rules, a properly filed amended complaint supersedes the original one and becomes the operative one. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017). The question before the Court is whether this same rule holds when the amendment is filed while the case was still in state court, but was not properly served, as required for a complaint to become operative under that State's law.

In support of their position that the amended complaint is not effective until it is served, the Stinson Defendants cite New Mexico Rule 1-005 and *State ex rel. McGill v. Bassett*, 2023-NMCA-033, 528 P.3d 739. Rule 1-005(A) NMRA provides: "every pleading subsequent to the

9

original complaint … shall be served upon each of the parties." In *McGill*, the New Mexico Court of Appeals said that service of an amended complaint under Rule 1-005(A) is required for the amended complaint to be in effect, regardless of whether the defendant had constructive notice of it. *See McGill*, 2023-NMCA-033, ¶ 1. There, plaintiffs served the defendant, a public employee, with the original complaint, but after filing an amended complaint adding a claim, plaintiffs neglected to serve the amended complaint on the defendant before moving for default judgment. *Id.* Relying on Rule 1-005(A), the New Mexico Court of Appeals held "that the district court abused its discretion by refusing to grant the motion to set aside the default and partial summary judgment because the district court never obtained jurisdiction over [defendant] due to Plaintiffs' failure to serve the first amended complaint." *Id.* ¶ 16. It explained that, because plaintiffs added a new claim to the complaint, they "were required to serve the first amended complaint before moving for default judgment." *Id.* ¶ 17. That the defendant had actual notice of the first amended complaint was unavailing, because "New Mexico has long held that actual knowledge of a lawsuit is not a substitute for service of process." *Id.* ¶ 18.

A fair reading of *McGill* is that New Mexico courts will not deem an amended complaint operative unless it is properly filed *and* properly served. So, here, where at the time of removal the amended complaint had not been properly served on the Stinson Defendants, New Mexico state courts would have considered the original complaint the operative one as to those defendants. Nevertheless, when the Stinson Defendants removed the case to federal court, they attached the state-court pleadings, which included the first amended complaint. Does that additional step of filing the first amended complaint in federal court as part of the state court record change the status of it, making it the operative pleading? After all, at that point in time, the operative procedural rules shift to federal ones.

The parties did not provide binding authority on this issue. Nor did the Court's research find any Supreme Court or Tenth Circuit law on point.[2] This Court, however, is not the first district court to consider the issue. Among those courts to have confronted a similar fact pattern, there is a split among them, but the majority have held that, when an amended complaint has been merely filed, not served, a defendant's removal based on the original complaint is proper. *See*, *e.g.*, *Goel v. Coalition America Holding Co. Inc.*, Case No. CV 11-2349 GAF (Ex), 2011 WL 13128299, at *2 (C.D. Cal. May 19, 2011) (explaining that, where plaintiff filed amended complaint two days before defendant removed case, but had not served it, original complaint remained operative complaint until first amended complaint was properly served on defendant, and thus, defendant's removal based on original complaint was not defective); *Goldberg v. Cameron*, No. 5:15-CV-02556-RMW, 2015 WL 5316339, at *3 (N.D. Cal. Sept. 11, 2015) ("Because the amended complaint and notice of entry of the dismissal were not served by the time defendants filed the notice of removal, the original complaint was the operative complaint in the case."); *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078 (NGG)(VMS), 2014 WL 123488, at *6-8 (E.D.N.Y. Jan. 10, 2014) (noting majority of courts from other circuits favors rule requiring service and examining initial complaint because plaintiff both filed and served that pleading on defendant prior to removal); *Momans v. St. John's Northwestern Military Academy, Inc.*, No. 99 C 8510, 2000 WL 33976543, at *2 (N.D. Ill. Apr. 20, 2000) ("Although an amended complaint ordinarily supersedes an earlier pleading, service of the amended complaint must be

---

[2] Plaintiffs cited district court cases that were not on point. (*See* Pls.' Reply 3, Dkt. No. 41.) Plaintiffs' cited cases held that, when determining if a defendant is a sham defendant, courts should not consider whether the plaintiff failed to serve the non-diverse defendant. *See Serna v. Family Dollar Stores of New Mexico, Inc.*, No. 2:20-cv-00090-KRS-GBW, 2020 WL 2840320, at *2 (D.N.M. June 1, 2020) (explaining that, when considering diversity jurisdiction, the failure to serve defendant who would defeat diversity jurisdiction does not permit court to ignore that defendant in determining propriety of removal based on face of complaint); *Trujillo v. Reinalt-Thomas Corp*., CV No. 21-1072 MV/CG, 2022 WL 831824, *7 (D.N.M. Mar. 21, 2022) (same). *See also Valdez v. Metro. Prop. & Cas. Ins. Co*., 867 F.Supp.2d 1143, 1182 (D.N.M. 2012) (discussing amount in controversy). These cases do not address which is the operative complaint at the time of removal.

completed to effectuate the amended pleading."); *Thompson v. Victoria Fire & Cas. Co.*, 32 F.Supp.2d 847, 848 (D.S.C. 1999) ("The complaint in effect at the time of removal was the original complaint because the amended complaint, although filed with the state court, had yet to be served on the defendants as required by Rule 5 of the South Carolina Rules of Civil Procedure."); *Pritt v. Republican Nat'l Comm.*, 1 F.Supp.2d 590, 591 (S.D.W.Va.1998) (in analyzing issue of fraudulent joinder, court considered original complaint, not amended complaint, where amended complaint was filed in state court day before case was removed, but was not served on defendants until after removal). *See also Williams v. Connecticut General Life Ins. Co.*, No. DIV 06-2747 PHX RCB, 2008 WL 4183372, at *1 (D. Ariz. Sept. 10, 2008) ("The point of supersedure occurs 'when the amended complaint is properly served, *not* when it is filed.") (quoting *Doe v. Unocal Corp.*, 27 F.Supp.2d 1174, 1180 (C.D. Cal. 1998)).[3]

In so holding, some courts have reasoned that a rule allowing the amended pleading to supersede the original on filing, would invite gamesmanship. *See, e.g.*, *Goel*, 2011 WL 13128299 at *6. A plaintiff could strategically preclude removal by filing, but not serving, an amendment and waiting in the hopes that the defendant will not discover the amendment within 30 days. *Id.*; *Noorazar v. BMW of North America, LLC*, Case No.: 18-CV-02472 W (JLB), 2019 WL 442477, at *2 (S.D. Cal. Feb. 5, 2019) (same). The analysis of the Eastern District of New York in *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, also contains persuasive analysis as to why the text of the removal statute supports a rule requiring service:

> Several subsections of that statute rely specifically on the time of service as the operative starting point for removal proceedings. For example, under subsection (a), the removing defendant must file a copy of all pleadings "served upon such defendant," and subsection (b)(2)(A) requires consent from "all defendants who have been properly joined and served." *See* 28 U.S.C. § 1446….

---

[3] *But see Ruiz v. Farmers Ins. Co.*, 757 F.Supp. 1196, 1197 (D. Kan. 1991) (analyzing diversity jurisdiction based on amended complaint, which had been filed but not yet been served on defendant, in ruling that removal was improper because amended complaint revealed no diversity of citizenship).

> If Congress had intended to allow removal based on pleadings not yet served, it would have required in 28 U.S.C. § 1446(a) that the defendant append all pleadings "recei[ved] by or serv[ed] on that defendant"-the language Congress used in subsection (b)(2)(B)-rather than the language it chose, which required appending only the pleadings "served upon such defendant." 28 U.S.C. § 1446. Therefore, where case law guides courts to consider the pleadings "at the time when defendant file[d] the notice of removal," *Blockbuster[,Inc., v. Galeno]*, 472 F.3d [53,] 56–57 [(2d Cir. 2006)], that guidance is best understood as referring to the pleadings Congress required be filed with the notice of removal-in other words, those pleadings "served upon such defendant." 28 U.S.C. § 1446(a).

2014 WL 123488, at *6-7.

In support of the service rule, many of the district courts relied on the case of *International Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2d Cir. 1977). *See, e.g.*, *Momans*, 2000 WL 33976543, at *2; *Thompson*, 32 F.Supp.2d at 848. In *Vesco*, the district court issued judgments on an original complaint, even though an amended complaint had been filed, but not properly served on the defendant. 556 F.2d at 668. In upholding the judgments, the Second Circuit concluded that the original complaint is not superseded until the amended complaint is served, at least where the amended complaint is required to be served. *Id.* at 669.

For the foregoing reasons, the Court finds that the Stinson Defendants properly filed its Notice of Removal based on the operative complaint as to them. Consequently, it rejects Plaintiffs' argument that the Stinson Defendants' Notice of Removal is procedurally defective for having failed to address the allegations of the unserved amended complaint.

### 2. Snell's consent to removal was proper.

The Stinson Defendants, however, urge the Court to only consider the contents of the initial complaint, ignoring that Snell was properly served with the amended complaint prior to removal. Although the Stinson Defendants filed their Notice of Removal first, Snell consented to removal, but it based its consent on the amended complaint, which was the operative complaint as to it. The

Court finds that Snell likewise met § 1446's procedural requirements when it filed its consent to removal and based its assertions of diversity jurisdiction on the allegations of the amended complaint. *Cf. Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 531-32 (6th Cir. 1999) (explaining that, even though district court had previously remanded case, a later-served defendant who was not involved in first removal attempt has an opportunity to present evidence regarding his residence and effect removal with consent of remaining defendant).

### B. There is complete diversity among the non-fraudulently joined parties.

#### 1. The Stinson Defendants adequately alleged and proved the citizenship of each of its partners.

The party asserting jurisdiction must clearly plead jurisdiction on the face of the complaint or notice of removal. *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972). Merely alleging the residence of the party is not enough, as "'residence' may not be equated with 'citizenship' for the purposes of establishing diversity." *Id.* Domicile is what is relevant for determining citizenship. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). Domicile includes both that a person is a resident of a state and has the intent to remain there indefinitely. *See Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983). Limited liability partnerships are citizens of every state of which any partner is a citizen. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 569 (2004); *Penteco Corp. Ltd. Partnership-1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521-23 (10th Cir. 1991).

A notice of removal that fails to specify the necessary facts to establish diversity jurisdiction is defective. *Hendrix v. New Amsterdam Casualty Co.*, 390 F.2d 299, 300 (10th Cir. 1968). Technical defects, however, may be cured by amendment of the notice. *See id.* at 300-02 (permitting amendment of notice of removal to allege principal place of business of defendant and citizenship, rather than mere residence, of plaintiff); *Whitelock*, 460 F.2d at 515 (permitting

plaintiff 20 days to file verified amendment to complaint alleging, in addition to each party's residence, each party's citizenship at time of filing of original complaint); 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

Plaintiffs contend that the Stinson Defendants rely on conclusory allegations of residence that are insufficient to support diversity jurisdiction. In their Notice of Removal, the Stinson Defendants stated that Plaintiffs Belgravia Capital and Belgravia Gold asserted they are citizens of Canada. (Notice 1 & ¶ 9, Dkt. No. 1.) As for Defendant Lackey, the Notice says he resides in Texas and "is a citizen of the state of Texas." (*Id.* ¶ 12.) The allegations of citizenship are sufficient as to Belgravia Capital, Belgravia Gold, and Lackey.

Turning to Stinson, the Notice asserts that, at the time of removal, Stinson was a limited liability partnership with 312 partners, "none of whom reside in Canada", so "Stinson is not a citizen of Canada for purposes of diversity jurisdiction." (*Id.* ¶ 10.) This allegation is sufficient to assert that Stinson is not a citizen of Canada. Additionally, they asserted that "none of the Stinson partners resided in the state of New Mexico." (*Id.* ¶ 11.) In the attached Declaration, Julie Baker, Senior Director of Partner Compensation, Tax and Payroll for Stinson, averred that none of Stinson's partners reside in New Mexico. (Baker Decl. ¶¶ 2, 4-5, Dkt. No. 1-1.) As Defendants correctly point out, proof that a person is a resident of a state may be prima facie evidence of his or her citizenship of that state. *See Siloam Springs*, 781 F.3d at 1238 & n.2 (quoting *Whitelock*, 460 F.2d at 514 n.14). When a party is relying on such prima facie evidence, to establish jurisdiction, the district court must at some point make a finding as to the existence of diversity at the time of the filing of the complaint. *Id.* at 1238.

In their response, the Stinson Defendants attached the Declaration of Keith Moheban, a partner in the Stinson firm, who set out the 18 states of residence of all 312 partners at the time of removal, none of which was in Canada or New Mexico. (Moheban Decl. ¶¶ 6, Dkt. No. 31-1.) Moheban also averred that no Stinson partner resides in Canada, has Canadian citizenship, or is licensed to practice law in Canada. (*Id.* ¶ 7.) He further stated that no Stinson partner has a present intent to become a citizen of either Canada or New Mexico. (*Id.*) Plaintiffs offered no suggestion of evidence to dispute these facts. Based on the record before the Court, the Court finds that Stinson's partners are not citizens of Canada or New Mexico, and instead, are citizens in states other than New Mexico. The Court will therefore not remand on the technicality of failing to more specifically assert in the removal petition that none of the partners were "citizens" of New Mexico and were "citizens" of other named states. Consequently, the Stinson Defendants established complete diversity as to the original complaint that was served on them at the time they removed the case.

### 2. The Court must consider the citizenship of Snell and Belgravia NM, and Snell is diverse from Belgravia Capital and Belgravia Gold.

Contrary to the Stinson Defendants' argument, however, this Court cannot ignore the amended pleading, which was served on and is operative to Snell. As the Supreme Court explained, the plaintiff controls which claims to bring and against whom, and when the plaintiff amends the complaint, the case proceeds on the amended complaint. *Royal Canin*, 604 U.S. at 35-36. Because, in removed cases, amending a complaint to join a non-diverse party destroys jurisdiction, *id.* at 38, this Court must look to the citizenship of the parties added to the amended complaint – Snell and Belgravia NM.

Snell adequately alleged in its Notice of Consent to Removal that it is a limited liability partnership and that it is "not a citizen of Canada or New Mexico." (Notice 5, Dkt. No. 20.) It also

provided an evidentiary basis in support of its assertion: the state of domicile of individual partners and the state of incorporation and principal place of business for its corporate partners. (*Id.* at 4-5; Day Decl. ¶¶ 4-7 & Ex. 1, Dkt. No. 20-4.) Defendant Snell, like the Stinson Defendants, is therefore diverse from Plaintiffs Belgravia Capital and Belgravia Gold. The Court now turns to whether it may consider the citizenship of Plaintiff Belgravia NM when conducting the complete diversity analysis.

### 3. Belgravia NM was fraudulently joined, and its citizenship need not be considered for purposes of the diversity jurisdiction analysis.

Fraudulent joinder "must be pleaded with particularity and proven with certainty." *McLeod v. Cities Service Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956). In this case, Defendant Snell asserted in its Notice of Consent to Removal that, even if Belgravia NM had a member that was a citizen of one of the states in which a Defendant was a citizen, the Court can disregard Belgravia NM's citizenship under the fraudulent joinder doctrine. (Notice of Consent 7, Dkt. No. 20.) According to Snell, Belgravia NM, organized mere days before Plaintiffs amended their complaint, has no viable cause of action against Defendants because it did not exist at the time the alleged misconduct occurred that is the basis of the legal malpractice claims. (*See id.* at 6-7.) Snell asserts that any claim based on the purported assignment of claims is not viable because, under New Mexico law, claims arising from relationships of a personal nature, like the attorney-client relationship, are not assignable. (*Id.* at 7.)

In its motion to remand, Plaintiffs contend that Belgravia NM, by virtue of its assignment, has an actual, substantive stake in the litigation and its citizenship must be considered.[4] Relying

---

[4] Plaintiffs also argue that the Tenth Circuit explicitly declined to adopt the fraudulent *mis*joinder or procedural *mis*joinder doctrine. Fraudulent *mis*joinder, while related, is distinct from fraudulent joinder. *De La Rosa v. Reliable, Inc.*, 113 F.Supp.3d 1135, 1166 (D.N.M. 2015). "Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action." *Lafalier v. State Farm Fire and Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. Aug. 19, 2010) (quoting E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder*

on the Partial Assignment, Plaintiffs argue that Belgravia NM "was created as a dedicated holding company for the New Mexico-related legal assets," and it has a 50% interest in the legal malpractice claims, (Pls.' Mot. 16, Dkt. No. 25), as well as an obligation to pay 25% of the litigation costs, (*id.* at 17). According to Plaintiffs, the Partial Assignment contains a New York choice-of-law provision, and under New York law, legal malpractice claims are generally assignable. (*Id.* at 12.)

Consequently, to determine the fraudulent joinder issue, the Court must first sort out the choice-of-law question.

### a. New Mexico law applies.

According to the Partial Assignment: "This Assignment shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of law principles." (Partial Assignment 1, Dkt No. 25-1 at 7 of 8.) Defendants contend that this provision only applies to disputes between Belgravia and Belgravia NM. As to the determination of whether Belgravia's claims are assignable, Defendants contend that the Court must look to New Mexico's choice-of-law principles, which point to New Mexico as the governing law.

Before turning to which law applies to the assignment, the Court will consider whether there is a conflict between New York and New Mexico law on the issue. According to Plaintiffs, under New York law, legal malpractice claims are generally assignable. Defendants do not dispute that point, and so the Court will assume that New York law would permit the assignment. Defendants, however, argue that New Mexico law does not permit the assignment of legal

---

*Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)). The issue is one of whether the claims against one defendant are "wholly distinct" from claims against the other defendants, and thus, insufficient for joinder under Federal Rule of Civil Procedure 20. *Id.* Fraudulent misjoinder arises from procedure whereas fraudulent joinder looks into whether there is a substantive factual or legal basis for a plaintiff's claim. *See De La Rosa*, 113 F.Supp.3d at 1166 (quoting E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569, 572 (2006)). Here, it is clear from the Notice of Consent to Removal that Defendants are asserting fraudulent joinder, so the Court will limit its analysis to that doctrine.

malpractice claims. Plaintiffs contest this assertion, urging that New Mexico likewise does not bar the assignment of legal malpractice claims. If Plaintiffs' position is correct, it would eliminate the need to go further in the choice-of-law analysis, so the Court will examine New Mexico law on this topic.

### (1) New Mexico bars assignment of legal malpractice claims.

An assignment is a transfer of property or right from one person to another, and generally the consent of the obligor is not required. *Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 2002-NMCA-080, ¶ 6, 51 P.3d 1172. An assignee may enforce its rights against the obligor directly. *Id.* In early common law, courts allowed assignments in commercial disputes, but not in personal injury suits. *See id.* ¶ 8. One reason for the prohibition in personal injury cases was to prevent the "unscrupulous trafficking in litigation as a commodity." *Id.* ¶ 10. As early as 1936, the New Mexico Supreme Court set out this general rule: "choses in action are assignable, the few exceptions are those for personal wrongs and contracts of a personal nature involving confidence, skill, and others of like nature." *Parker v. Beasley*, 1936-NMSC-004, ¶ 10, 54 P.2d 687.

More recently, in *Quality Chiropractic*, the New Mexico Court of Appeals considered whether a patient could validly assign his claims arising out of a car accident to a chiropractic clinic who provided him treatment. *See id.* ¶¶ 1-2. The New Mexico Court of Appeals said no, declining to abrogate the common rule prohibiting the assignment of personal injury claims and rejecting any distinction between an assignment of the proceeds of a claim and an assignment of the claim itself. *Id.* ¶ 36.[5] One reason given for its holding is that the court believed that allowing

---

[5] As the New Mexico Court of Appeals explained, there is a split in authority on this issue: some courts continue to prohibit assignment of personal injury claims; others now permit the assignment of any cause of action; while a third group prohibits the assignment of a cause of action but allows an injured party to assign the proceeds of a future judgment. *See Quality Chiropractic*, 2002-NMCA-080, ¶¶ 10-12. The latter courts find the rule preferable so that the injured tort victim maintains control over the case. *Id.* ¶ 11.

injured tort victims to assign their personal injury claims could complicate the settlement of relatively straightforward cases. *See id.* ¶ 25.

Following *Quality Pontiac*, the New Mexico Court of Appeals again considered the validity of an assignment of claims in *Wilson v. Berger Briggs Real Estate & Ins., Inc.*, 2021-NMCA-054, 497 P.3d 654, the primary case relied upon by Defendants. In *Wilson*, a patron attending a show was severely injured when he was shot during an altercation and sued the property owner (the Lodge). *Id.* ¶¶ 2-4. Although the Lodge previously sought coverage from a real estate/insurance company (Berger Briggs) for anything that might happen at the Lodge, the general liability policy the Lodge procured contained exclusions for assault, battery, and firearm coverage. *Id.* ¶ 3. After the insurer received a court decision finding the policy did not provide coverage, the Lodge settled with the patron and assigned to the patron all claims it had against Berger Briggs and all related insuring entities, which included claims for negligent failure to procure the requested coverage, negligent misrepresentation, and breach of contract. *Id.* ¶¶ 4, 6. As relevant here, the patron then filed suit against Berger Briggs and the insurer. *Id.* Berger Briggs asserted that the claims were personal and thus unassignable. *Id.* ¶ 6. The New Mexico Court of Appeals disagreed, concluding that, under New Mexico law, the claims were commercial in nature, were validly assigned to the patron, and thus the patron was not barred from asserting the claims. Id.

Relying on *Quality Chiropractic*, the *Wilson* court said that in New Mexico "personal injury claims are not assignable, yet our jurisprudence suggests commercial disputes are." *Id.* ¶ 8. It explained that as "yet, neither law nor jurisprudence in New Mexico has evolved to permit the assignment of personal causes of action or directly held that claims of a commercial nature are indeed assignable." *Id.* It nonetheless concluded that in New Mexico commercial tort claims are assignable. *Id.* ¶ 10. The *Wilson* court determined that the claims at issue in the case – including

negligent failures to procure insurance coverage, negligent misrepresentation, breaches of contract, fiduciary duty, and the UPA—were not personal injury or personal tort claims, *id.* ¶ 12, but they fell "squarely within the category of commercial tort claims," *id.* ¶ 11. Of relevance to the New Mexico Court of Appeals was that the claims all arose from the business relationship of the Lodge and its insurance agent "and in no way relate to claims for personal injuries or violation of purely personal rights caused by that relationship." *Id.* ¶ 12. Additionally, the relationship "was little more than an arm's length commercial transaction between two businesses." *Id.*

Because Berger Briggs argued its relationship with the Lodge was like an employment contract, the *Wilson* court next addressed the assignability of personal service contracts. *Id.* ¶ 13. The New Mexico Court of Appeals explained that, under New Mexico law, "personal service contracts may be assignable only with consent," *id.*, and "'personal wrongs and contracts of a personal nature involving confidence, skill, and others of like nature' are not assignable," *id.* (quoting *Parker*, 1936-NMSC-004, ¶ 10). It rejected Berger Briggs' contention, because its "business relationships with its clients do not entail the sort of contracted-for personal qualities or skills that would prohibit assignability of a cause of action arising therefrom." *Id.* By way of contrast, the *Wilson* court cited approvingly a case that provided "examples of duties 'too personal in character' to permit assignment, including 'a contract to furnish an abstract of title; a contract to render professional services as a physician, lawyer, or architect ....'" *Id.* (citing *Baker v. Conoco Pipeline Co.*, 280 F.Supp.2d 1285, 1295-96 (N.D. Okla. 2003)). Because the New Mexico Court of Appeals determined that none of the assigned causes of action stated injuries or claims of a personal nature, but were commercial in nature, it held "that commercial claims of the nature at issue in this case are assignable." *Id.* ¶ 14.

Plaintiffs, however, point out that *Wilson* did not involve a legal malpractice claim and it did not squarely address the assignment of legal malpractice claims. While it is true *Wilson* did not address the precise issue here, it offers considerable guidance as to how New Mexico courts would rule on this issue. *Quality Chiropractic* kept in place the common rule prohibiting the assignment of personal injury claims. *Wilson* made an exception to that prohibition, allowing assignment for commercial torts, but in doing so, took care to explain the limitations of its expansion. *Wilson* made clear that claims arising from relationships and contracts of a personal nature, like the attorney-client relationship, are not assignable based on long-standing principles of New Mexico law.

Plaintiffs' reliance on *Leger v. Gerety* in support of a more limited interpretation of New Mexico's anti-assignment rule is not persuasive. In *Leger*, the New Mexico Supreme Court considered whether New Mexico's Medical Malpractice Act (MMA) prohibits the assignment of a hospital's third-party indemnity claim against a qualified healthcare provider. 2022-NMSC-007, ¶ 1, 503 P.3d 349. Section 41-5-12 of the MMA says that a "patient's claim for compensation under the [MMA] is not assignable." *Id.* There, the petitioner sued a hospital for medical malpractice, and the hospital in turn sued a doctor and another hospital for indemnification. *Id.* ¶ 2. As part of the petitioner's settlement, the hospital assigned its indemnification claim to petitioner. *Id.* The Supreme Court held that the language of the statute was unambiguous, and the MMA does not bar assignment of a third-party indemnity claim. *Id.* ¶ 4.

As relevant to this case, the New Mexico Supreme Court addressed respondents' argument that it should prohibit assignments of MMA indemnity claims for the same reasons the common law prohibited the assignment of personal injury claims. *See id.* ¶ 45. The *Leger* court explained that indemnity claims are separate and distinct from the underlying tort; an indemnity action is not

one for damages for personal injury, but rather, damages owing from one tortfeasor to another. *Id.* ¶¶ 37-41. Citing the *Quality Chiropractic*, *Wilson*, and *Parker* cases with approval, the New Mexico Supreme Court confirmed that "the prohibition on assigning personal injury claims retains its force in many jurisdictions, including New Mexico." *Id.* ¶ 48. It specifically quoted *Parker* for the general rule that choses in action are assignable but "the few exceptions are those for personal wrongs and contracts of a personal nature involving confidence, skill, and others of like nature." *Id.* (quoting *Parker*, 1936-NMSC-004, ¶ 10). It reiterated the reasons for the general prohibition on assignment of personal torts: "Trading in personal torts raises specific policy concerns, including whether such actions survive the injured person, whether such distinctly personal torts are properly advanced by others, and whether they exploit the particular vulnerability of injured persons." *Id.* ¶ 47.

Plaintiffs read *Leger* as the New Mexico Supreme Court reinforcing the limited scope of New Mexico's anti-assignment rule. While *Leger* permitted the assignment of indemnity claims arising from medical malpractice, its holding was based on a statutory construction of the MMA. Its holding was further limited to the nature of indemnity claims. *Id.* ¶¶ 46-47. Contrary to Plaintiffs' argument, and of more significance to this case, *Leger* confirmed the continuing vitality of the common law prohibitions for assignment of personal injury claims and actions arising from contracts of a personal nature set forth in *Quality Chiropractic*, *Wilson*, and *Parker*. *Id.* ¶ 48. Although these cases do not directly hold that legal malpractice claims are not assignable, their statements concerning the scope of the rule against assignments of personal injury suits make clear that the rule extends to legal malpractice claims.

Plaintiffs nevertheless contend that this Court should rely, not on the general statements of law set forth in the aforementioned cases, but instead on a federal district court case addressing

the assignability of legal malpractice claims: *Worthington v. MGA Ins. Co., Inc.*, No. 2:17-cv-00498-PJK-GBW, 2017 WL 3142030 (D.N.M. July 24, 2017). Like here, the issue in *Worthington* was whether a party was fraudulently joined. *Id.* at *2. There, a plaintiff won a judgment arising from injuries in a car accident against the tortfeasor who was insured and whose insurer hired the lawyer to represent him. *Id.* at *1. Following entry of a judgment more favorable than the pre-trial settlement offer, the tortfeasor executed a partial assignment to the plaintiff of any claims he had against his insurer and the lawyer and his firm. *Id.* The plaintiff and tortfeasor then sued the insurer and the lawyer defendants, the latter of whom were non-diverse from plaintiffs. *Id.* The insurer argued that the plaintiffs fraudulently joined the lawyer defendants, because the claims for legal malpractice and breach of fiduciary duty could not be assigned from the tortfeasor to the plaintiff as a matter of public policy. *See id.* at *2.

In analyzing this argument, the district court noted that New Mexico had no clear decision prohibiting the assignment of legal malpractice claims. *Id.* The district court looked to *First National Bank of Clovis v. Diane, Inc.*, 1985-NMCA-025, 698 P.2d 5, which it construed as upholding "an assignment of any proceeds recovered from a legal malpractice claim." *Worthington*, 2017 WL 3142030, at *2. However, because the assignment was only partial, the court determined that the tortfeasor would still be a real party in interest, even if the assignment was held invalid. *Id.* Consequently, *Worthington* did not ultimately decide the question of the validity of an assignment of legal malpractice claims. *See id.* at *2-4. Importantly as well, the *Worthington* case was decided without the benefit of *Wilson* or *Leger*. Nor did *Worthington* consider *Quality Chiropractic* or the policy implications surrounding allowing assignments of personal injury suits or suits involving personal-service contracts.[6]

---

[6] Nor does the Court find the case upon which *Worthington* cited controlling. In *First National Bank of Clovis v. Diane, Inc.*, a broker was sued on a third-party claim for charging an excessive commission arising from the negotiation of a

Instead, the Court finds persuasive the discussion in *Quality Chiropractor*, *Wilson*, and *Leger* concerning personal-service contracts and the reasons for limiting assignment of personal injury claims and claims arising from personal relationships. The claims at issue here are for legal malpractice against all the defendants; negligent and/or intentional misrepresentation against all Defendants with the intent to induce Belgravia to retain and continue to retain them, respectively, as legal counsel; and violation of the New Mexico Unfair Trade Practices Act based on Defendants' actions and representations made in securing the attorney-client relationship and during the course of the representation. (*See* First Am. Compl. 8-12, Dkt. No. 20-3.) Notably, Plaintiffs allege that Stinson and Lackey's conduct "reflected a fundamental disregard for their professional responsibilities to Belgravia, severely undermining the trust essential to the attorney-client relationship." (*Id.* ¶ 28.) Similarly, Plaintiffs assert that Snell breached its professional duties. (*Id.* ¶ 18.) The Court concludes that, if the case were before the New Mexico Supreme Court, it would hold that the legal malpractice claims asserted here are of a personal nature that involve confidence and skill and, therefore, are not assignable under New Mexico law.[7]

---

loan on behalf of Diane, Inc. 1985-NMCA-025, ¶ 3. After the trial court determined the broker was liable, he filed a crossclaim against his attorney for legal malpractice and was awarded damages. *Id.* ¶¶ 3-5. The broker and Diane, Inc., then entered a settlement agreement, in which in exchange for a release and satisfaction, the broker paid $45,000 and assigned "the first proceeds of any Judgment which [broker] may obtain against" his attorney. *See id.* ¶¶ 6, 44. The attorney argued that the award against him should be reduced by $5,000 because the broker ceased being the real party in interest as to any amount exceeding $45,000. *Id.* ¶ 42. In rejecting the attorney's argument, the New Mexico Court of Appeals concluded that the broker continued to be the real party in interest because the "release and satisfaction agreement assigned only the proceeds and not the right of action against defendant." *Id.* ¶¶ 43-44. This case thus only involved an assignment of *proceeds* and is distinguishable on that ground. Additionally, the case contains no further discussion of the validity of the assignment of legal malpractice claims or the public policy considerations surrounding such assignments. The Court thus does not find the *Diane* case particularly relevant to this analysis.

[7] Plaintiffs also argue that, because no New Mexico appellate court has squarely addressed the issue, the claim is possibly viable under New Mexico law and this Court should leave the merits decision to the state court on remand. This Court, however, must determine whether the claim cannot stand "with complete certainty" and "the issue must be capable of summary determination." *See Smoot*, 378 F.2d at 882. This issue is a legal one, and thus is capable of summary determination. The Court has looked to New Mexico appellate law and concluded that the assignment of claims here is not valid based on its analysis of that law.

New Mexico and New York law thus diverge on the question of the validity of the Partial Assignment. The Court will thus need to determine which law applies here.

### (2) The New York choice-of-law provision is precluded by New Mexico public policy.

A federal court with jurisdiction based on diversity generally applies the choice of law rules of the State in which it sits. *Gerson v. Logan River Academy*, 20 F.4th 1263, 1270 (10th Cir. 2021). In New Mexico, to determine which law applies, the court first must characterize the area of substantive law, such as torts or contracts, to which the law of the forum assigns a particular claim or issue. *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 11, 142 P.3d 374. New Mexico generally treats legal malpractice cases as torts. *Leyba v. Whitley*, 1995-NMSC-066, ¶ 12, 907 P.2d 172. For torts, the law of the state in which the wrongful conduct occurred usually applies. *Torres v. State*, 1995-NMSC-025, ¶ 13, 894 P.2d 386.

In this case, Plaintiffs assert various tort claims against Defendants: legal malpractice, negligent and/or intentional misrepresentation, and violation of the New Mexico Unfair Trade Practices Act, NMSA § 57-12-1, *et seq*. (*See* First Am. Compl. ¶¶ 31-62, Dkt. No. 20-3.) The claims arise out of Defendants' alleged "professional negligence, misrepresentations, and related misconduct stemming from their legal representation of Plaintiffs, including their handling of a lawsuit filed in the United States District Court for the District of New Mexico." (*Id.* ¶ 1.) According to the First Amended Complaint, "Defendants transacted business in the State of New Mexico and committed tortious acts and omissions within the State of New Mexico, giving rise to the claims asserted in this action." (*Id.* ¶ 7. *See also id.* ¶ 8 ("the events and conduct giving rise to this action occurred in Bernalillo County, New Mexico").) New Mexico is therefore the state in which the wrongful conduct occurred.

Plaintiffs argue, however, that the New York choice-of-law provision in the Partial Assignment controls. Because the assignment is valid under New York law, Plaintiffs contend this Court must likewise find the assignment valid and that Belgravia NM has a valid claim. The Court disagrees.

As a general rule, New Mexico recognizes the validity of choice-of-law provisions contained in contracts. *Burge v. Mid-Continent Cas. Co.*, 1997-NMSC-009, ¶ 11, 933 P.2d 210 (1996). Nevertheless, "when the choice of law rule leads to the law of another state and that law is different from the law of the forum, the forum may decline to apply the out-of-state law if it offends the public policy of New Mexico." *United Wholesale Liquor Co. v. Brown-Forman Distillers Corp.*, 1989-NMSC-030, ¶ 12, 775 P.2d 233, 236. "New Mexico courts will not give effect to another state's laws where those laws would violate some fundamental principle of justice. *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 7, 188 P.3d 1215 (internal quotations and citation omitted).

New Mexico public policy prohibits the assignment of legal malpractice claims. *See* cases cited *supra*. As outlined, this rule arises from a deep-rooted common law tradition of prohibiting the assignment of personal injury claims. *See Quality Chiropractic*, 2002-NMCA-080, ¶¶ 8-10, 30, 36 (explaining that "rule prohibiting the assignment of personal injury claims is well rooted in the common law" and refusing to abrogate common law rule). Upholding the validity of the Partial Assignment would run afoul of fundamental New Mexico policy against the assignment of claims of a personal nature that involve confidence and skill. *See Wilson*, 2021-NMCA-054, ¶¶ 11-13; *Quality Chiropractic*, 2002-NMCA-080, ¶¶ 10, 21. *Cf. Roberts v. Holland & Hart*, 857 P.2d 492, 495-96 (Colo. App. 1993) ("we hold that the assignment of legal malpractice claims is against public policy" and collecting cases where majority of jurisdiction have similarly held).

Accordingly, New Mexico courts would not give effect to the New York law permitting assignment of legal malpractice and related claims in contravention of that policy.

### b. Belgravia NM was fraudulently joined

Applying New Mexico law, the Partial Assignment is invalid. Belgravia NM therefore has no viable legal claims against Defendants. Accordingly, the Court finds Belgravia NM was fraudulently joined and will disregard its citizenship for purposes of determining diversity jurisdiction.

### c. Complete diversity of citizenship exists

Plaintiffs Belgravia Capital and Belgravia Gold are citizens of Canada. Defendant Lackey is a citizen of Texas. Defendant Stinson and Defendant Snell are citizens of multiple states, but not citizens of either Canada or New Mexico. Accordingly, Defendants have established complete diversity of citizenship. The amount in controversy is not contested. The Court therefore will deny Plaintiffs' motion to remand.

**IT IS THEREFORE ORDERED** that Plaintiffs' *Motion to Remand* (**Dkt. No. 25**) is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE

28