UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BELGRAVIA HARTFORD CAPITAL, INC.,**
and **BELGRAVIA HARTFORD GOLD ASSETS CORP.,**

    **Plaintiffs,**

v.                                                          No. 1:25-cv-00119-JCH-KK

**STINSON, LLP, PAUL LACKEY, ESQ., and
SNELL & WILMER L.L.P.,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On February 7, 2025, Defendants Stinson, LLP ("Stinson") and Paul Lackey ("Lackey") (collectively, the "Stinson Defendants") filed a *Motion to Compel Arbitration and Stay Proceedings* (Dkt. No. 3). The Stinson Defendants contend that Plaintiffs signed a written engagement agreement with them that contained a valid mandatory arbitration agreement covering the malpractice and related claims asserted in this case. They further argue that Plaintiffs waived any challenge to the validity of the arbitration agreement when they attempted to assert malpractice counterclaims in the arbitration. Defendant Snell & Wilmer, L.L.P ("Snell") filed a response (Dkt. No. 26), taking no position on the motion to compel arbitration because Snell is not a party to the arbitration agreement. Snell, however, asserts that the case should be stayed pending the outcome of the arbitration and the outcome of the underlying case, *Belgravia v. PolyNatura*, Case No. 2:21-cv-00918-MIS-JHR ("PolyNatura Lawsuit"). Plaintiffs Belgravia Hartford Capital, Inc. ("Belgravia Capital") and Belgravia Hartford Gold Assets Corp. ("Belgravia Gold") (collectively,

"Belgravia" or "Plaintiffs") filed a response opposing the motion (Dkt. No. 29).[1] Plaintiffs argue that their claims for legal malpractice, negligent/intentional misrepresentation, and Unfair Trade Practices do not seek fee-related damages, and thus, are not within the scope of the arbitration clause. Additionally, they argue that enforcing the arbitration agreement is unconscionable and violates public policy. The Court, having considered the motion, briefs, evidence, and relevant law, concludes that Plaintiffs waived the right to object to the validity of the arbitration agreement when they argued in the arbitration that their malpractice counterclaims should be heard alongside the fee claims in the arbitration. Accordingly, the Court will grant the motion to compel arbitration.

I.   **BACKGROUND**

A.  **Colorado Litigation Resulting in Royalty Agreement**

Belgravia Capital and Belgravia Gold, a wholly owned subsidiary of Belgravia Capital, hired Snell around May 8, 2017, as its legal counsel related to Belgravia's investments in mining assets and mineral rights connected to a Polyhalite deposit in Lea County, New Mexico. (*See* First Am. Compl. ¶ 10, Dkt. No. 20-3.) Lawsuits followed in both Colorado and New York. (*See* Settlement Agreement 1, Dkt. No. 30-1.) As part of the settlement of both lawsuits, Snell negotiated and drafted a settlement agreement in September 2017 as well as a Royalty Agreement, granting Belgravia royalty rights tied to the Lea County mine. (*See id.*; First Am. Compl. ¶ 11, Dkt. No. 20-3.)

B.  **New Mexico Litigation to Enforce Settlement and Royalty Agreements**

In September 2021, at Snell's recommendation, Belgravia filed a civil lawsuit in the United States District Court for the District of New Mexico against PolyNatura Corp concerning the

---

[1] The response was also filed by Belgravia Hartford Holdings NM LLC ("Belgravia NM"). This Court in a separate Memorandum Opinion and Order (Dkt. No. 48) concluded that Belgravia NM was fraudulently joined. The Court terminated Belgravia NM from the case and removed it from the caption. References to "Plaintiffs" no longer include Belgravia NM.

Royalty Agreement, *see Belgravia v. PolyNatura*, Case No. 2:21-cv-00918-MIS-JHR ("PolyNatura Lawsuit"). (First Am. Compl. ¶ 15, Dkt. No. 20-3.) Snell served as lead counsel for Belgravia in that case until it voluntarily withdrew as counsel, effective September 7, 2022. (*Id.* ¶¶ 15, 19.) After hiring and firing another law firm (Vinson & Elkins), Belgravia hired Stinson and Lackey as lead counsel to represent it in the PolyNatura Lawsuit. (*See id.* ¶¶ 17-24.)

On or about December 13, 2022, Plaintiffs and Stinson entered into a written engagement agreement ("Legal Services Contract") in which Stinson would provide legal services to Plaintiffs related to the PolyNatura lawsuit. (Moheban Decl. ¶ 3, Dkt. No. 4.) Under the "Fees and Charges" section of the Legal Services Contract, the contract stated: "PLEASE NOTE THAT THE GENERAL TERMS OF REPRESENTATION THAT WE ASK YOU TO AGREE TO INCLUDE A PROVISION CONCERNING MANDATORY BINDING ARBITRATION OF ANY DISPUTES ABOUT OUR FEES OR OTHER CHARGES." (Legal Services Contract 2, Dkt. No. 4-1.) The agreement further said that the provision was included "to resolve any such disputes quickly, efficiently and in a less public forum than in court, but it does cause both parties to give up rights that they would otherwise have to bring an action in court." (*Id.*) It also advised the client to seek separate counsel about whether to agree to the arbitration provision. (*Id.*)

The Legal Services Contract set forth the arbitration provision under the heading "RESOLUTION OF DISPUTES CONCERNING FEES AND OTHER CHARGES" (hereinafter "Arbitration Agreement"). (Legal Services Contract 7, Dkt. No. 4-1.) The provision said:

> ANY CLAIM, CONTROVERSY OR DISPUTE, WHETHER SOUNDING IN CONTRACT, STATUTE, OR TORT, OR ANY OTHER LEGAL THEORY, RELATED DIRECTLY OR INDIRECTLY TO THE FEES OR OTHER CHARGES BY OUR FIRM TO YOU, INCLUDING, BUT NOT LIMITED TO YOUR NON-PAYMENT OF ANY AMOUNTS BILLED TO YOU, SHALL BE RESOLVED BY MANDATORY BINDING ARBITRATION AS PRESCRIBED IN THIS SECTION. THE FEDERAL ARBITRATION ACT, NOT STATE LAW, GOVERNS THE ARBITRATION, INCLUDING BUT NOT LIMITED TO THE

3

QUESTION OF WHETHER A CLAIM IS SUBJECT TO ARBTRATION. YOU AND OUR FIRM EACH AGREE TO WAIVE ANY RIGHT TO TRIAL IN A COURT OF LAW AND ANY RIGHT TO A TRIAL BY JURY THAT MAY OTHERWISE EXIST.

(*Id.*)

Mehdi Azodi, President of Belgravia Capital and Belgravia Gold, signed the agreement after Lackey told him it was a "simple, standard agreement." (Azodi Decl. ¶¶ 2, 6, 8, Dkt. No. 29-1.) Lackey did not explain or mention the arbitration clause, and Mr. Azodi signed the agreement without consulting independent counsel. (*Id.* ¶¶ 9, 11.)

Lackey appeared in the PolyNatura Lawsuit in February 2023, then withdrew in May 2023. *See* Notice (Dkt. No. 77) and Order on Mot. for Withdrawal and Substitution of Counsel for Pl. (Dkt. No. 87), *Belgravia v. PolyNatura*, Case No. 2:21-cv-00918-MIS-JHR. The PolyNatura Lawsuit is ongoing, and trial has been set for February 17, 2026. *See* Jury Trial Order (Dkt. No. 236), *Belgravia v. PolyNatura*, Case No. 2:21-cv-00918-MIS-JHR.

### C. The Arbitration

In January 2024, Stinson filed an arbitration with the American Arbitration Association against Belgravia Capital and Belgravia Gold for unpaid legal work in *Stinson, LLP v. Belgravia Hartford Capital, Inc. and Belgravia Hartford Gold Assets Corp.*, AAA Arbitration No. 1-24-0000-2991 ("the Arbitration"). (*See* Moheban Decl. ¶ 5, Dkt. No. 4; Arbitration Claim, Dkt No. 4-2.) The parties proceeded in arbitration, with Belgravia filing a response denying the claim and asserting counterclaims for breach of the covenant of good faith and fair dealing implicit in the contract and breach of fiduciary duty. (*See* Statement of Counterclaims, Dkt. No. 4-3.) Belgravia alleged in its breach of contract claim that Stinson excessively, unreasonably, and unconscionably overbilled for unnecessary work. (*Id.* at 3-4.) They also contended that counsel had promised to do certain work but failed to and had missed discovery deadlines. (*Id.* at 4-5.) In support of their

breach of fiduciary duty claim, Belgravia alleged that Stinson charged excessive fees, failed to be candid about the merits and scope of the PolyNatura Litigation, failed to do work it promised to do, and failed to advance that litigation meaningfully. (*Id.* at 5.) Belgravia sought disgorgement of legal fees paid. (*Id.*) The arbitration was scheduled for a hearing on January 14-15, 2025. (Moheban Decl. ¶ 7, Dkt. No. 4.)

On December 2, 2024, Belgravia moved to abate and continue the final hearing in the arbitration proceeding until resolution of the PolyNatura Lawsuit. (Moheban Decl. ¶ 9, Dkt. No. 4; Mot. to Abate 1, 18, Dkt. No. 4-6.) In the motion, Belgravia stated:

> Belgravia denies any obligation to pay the outstanding invoices and asserts defenses and counterclaims related to Stinson's mishandling of the case and breaches of its contractual and fiduciary duties to Belgravia. The law is well established that an attorney's alleged malpractice, whether through negligence or breach of fiduciary duty, is central to a client's defenses against an attorney's fee claims, and indeed functions both as a compulsory counterclaim and a defense to a suit for recovery of attorney's fees. Consequently, the successful resolution of Belgravia's defenses and counterclaims could entirely negate Stinson's claim for fees.

(Pls.' Mot. to Abate 2, Dkt. No. 4-6.) Belgravia argued, however, that because the PolyNatura Lawsuit was ongoing, their "defenses and counterclaims concerning Stinson's representations are not yet ripe." (*Id.*) It continued, "Simply put, the Arbitrator could not fully address the merits of this dispute without conclusion of the Underlying Litigation, which, once resolved, would clarify and streamline the issues and claims in this arbitration." (*Id.*) As Belgravia explained,

> Belgravia has asserted affirmative defenses and counterclaims stemming from Stinson's mishandling of that very same litigation for which fees are sought…. Stinson's fee claim, Belgravia's defenses, and Belgravia's counterclaims are thus inextricably intertwined, arising from the same core operative facts: Stinson's representation of Belgravia in the Underlying Litigation. Under Texas law, Belgravia's claims regarding Stinson's mishandling of the Underlying Litigation are compulsory counterclaims which must be adjudicated alongside Stinson's fee claim…. New Mexico courts similarly hold that malpractice claims arising from a law firm's representation are compulsory counterclaims to fee disputes.

(*Id.* at 6-7 (citing, among other cases, *Brunacini v. Kavanagh*, 869 P.2d 821, 829 (N.M. App. 1993)).)

Stinson filed a response that opposed the motion to abate the arbitration, arguing that the motion was belatedly filed only a month before the scheduled arbitration and disputing Belgravia's assertions that they had pled counterclaims for malpractice or negligence. (Defs.' Ex. H at 1, Dkt. No. 34-2; Def.'s Ex. I, Dkt. No. 34-3.) Because Belgravia had only requested a remedy for the disgorgement of legal fees paid, Stinson contended that Belgravia had not requested any sort of relief arising from malpractice that would compel the need to abate the arbitration. (*See* Defs.' Ex. H at 4, Dkt. No. 34-2.) Stinson argued that Belgravia had not pled any malpractice or negligence claims against it. (*Id.* at 7-10.) Stinson additionally noted that any illusory malpractice claims had not matured because judgment had not yet been entered in the underlying litigation. (*Id.* at 10 n.2.)

The arbitrator denied Belgravia's motion to abate. (Defs.' Ex. I, Dkt. No. 34-3.) At the hearing on the motion, the arbitrator stated that Belgravia had not asserted malpractice claims in the arbitration, but did not rule on whether the malpractice claims were outside the scope of the arbitration. (Moheban Supp. Decl. ¶ 5, Dkt. No. 34-4.)

### D. New Mexico Legal Malpractice Lawsuit

On December 23, 2024, Belgravia sued Stinson and Lackey for legal malpractice, negligent and intentional misrepresentation, and violation of the Unfair Trade Practices Act in the Second Judicial District Court in the State of New Mexico (hereinafter "Malpractice Lawsuit"). (*See* Compl. 1, Dkt. No. 1-2 at 6-7 of 15.) Belgravia's claims arise out of their representation in the PolyNatura Lawsuit. (*See id.* ¶¶ 1, 8) The Stinson Defendants thereafter notified the arbitrator of the case and requested that the arbitration be stayed while they pursued this motion to compel. (Moheban Decl. ¶ 12, Dkt. No. 4.)

Plaintiffs subsequently filed an amended complaint, asserting causes of action against Stinson and Lackey and Snell for legal malpractice, negligent and intentional misrepresentation, and violation of the Unfair Trade Practices Act. (First Am. Compl., Dkt. No. 1-4.) Stinson and Lackey removed the case based on diversity jurisdiction, which Snell joined. (Notice of Removal 1-2, Dkt. No. 1; Consent Notice 1-3, Dkt. No. 20.)

### E.  Motion to Compel Arbitration

Defendants Stinson and Lackey filed a *Motion to Compel Arbitration and Stay Proceedings* (Dkt. No. 3) under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, asserting that this Court must stay this action and order Plaintiffs to continue to proceed in the existing arbitration. According to the Stinson Defendants, Belgravia is barred from proceeding in this Court because of the binding arbitration agreement between them, yet Plaintiffs frivolously brought this action after they were unsatisfied with rulings made by the arbitrator. The Stinson Defendants contend that Plaintiffs waived any challenge to the validity of the arbitration agreement by participating in the arbitration and arguing to the arbitrator that their malpractice claims were compulsory counterclaims that must be adjudicated alongside the fee claims.

Plaintiffs counter that the motion should be denied because their pleading raises legal malpractice, negligent/intentional misrepresentation, and Unfair Trade Practices claims that do not fall within the scope of the arbitration clause. They assert that the claims in this case hinge on the Stinson Defendants' professional conduct, and they do not seek fee-related damages or challenges to any bills. Additionally, they contend the arbitration clause violates New Mexico public policy because Stinson failed to obtain Belgravia's informed consent concerning the scope and effect of the agreement and the rights the client was waiving. Finally, Plaintiffs argue that the arbitration provision is unenforceable based on procedural and substantive unconscionability.

## II.     STANDARD

The Federal Arbitration Act makes an agreement to arbitrate in a contract evidencing a transaction involving commerce "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[2] The FAA "provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Under § 4 of the FAA, a court may order the parties to arbitrate upon determining that the making of the arbitration agreement or the failure to comply therewith is not in issue. 9 U.S.C. § 4.

The FAA favors arbitration, and it has created a body of federal substantive law establishing and regulating the duty to enforce arbitration agreements. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). To reverse the longstanding judicial hostility to arbitration agreements, Congress enacted the FAA to place arbitration agreements upon the same footing as other contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. A court must enforce an arbitration agreement according to its terms. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019).

"But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014). Arbitration is strictly based on consent, not coercion. *Lamps Plus*,

---

[2] The parties do not dispute that the Legal Services Contract evidences interstate commerce.

8

587 U.S. at 184. The parties' agreement controls the scope and procedures of the arbitration, and the task for a court is "to give effect to the intent of the parties." *Lamps Plus*, 587 U.S. at 184 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). The presumption in favor of arbitration "disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

Consequently, the existence of an arbitration agreement is a threshold matter that must be established before the FAA applies. *See Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). If the court determines that the parties entered into a valid arbitration agreement, the next question is whether the claims fall within the scope of the arbitration clause. *Soc'y of Pro. Eng'g Emps. in Aerospace, Int'l Fed'n of Pro. & Tech. Emps., Loc. 2001 v. Spirit Aerosystems, Inc.*, 681 F. App'x 717, 721 (10th Cir. 2017) (unpublished) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)).

"When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon*, 126 F.3d at 1283. When there are no genuine issues of material fact regarding the agreement to arbitrate, the court may decide the arbitration issues as a matter of law. *See Howard*, 748 F.3d at 984. On a motion to compel, the framework is similar to summary judgment practice: the moving party bears the burden of showing the arbitration agreement exists and applies to the non-moving party. *See Hancock v. American Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012), *abrogated on other grounds by Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49 (2013). If that burden is met, the non-moving party may attempt to rebut that showing with evidence establishing a genuine dispute as to whether the

9

arbitration agreement applies. *Id.* The court must give the party opposing arbitration the benefit of all reasonable doubts and inferences. *Id.*

### III. ANALYSIS

Generally, courts rely on state contract principles to construe the terms of an arbitration agreement, but the FAA preempts state law "to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA. *Lamps Plus*, 587 U.S. at 183 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)). Both parties rely on New Mexico state cases in support of their arguments, so the Court will likewise apply New Mexico law where it does not conflict with the FAA.

### A. Belgravia waived an objection to the arbitrability of their malpractice and related claims.

The Stinson Defendants argue that Belgravia waived any challenge to the validity and scope of the arbitration agreement by asserting malpractice claims in the arbitration. Plaintiffs respond that Defendants distort the record because "the arbitrator ruled that malpractice claims were outside the scope of the arbitration and would not be adjudicated." Pls.' Resp. 17, Dkt. No. 29. Plaintiffs assert that the Stinson Defendants cannot have it both ways – arguing in arbitration that the claims were excluded from litigation and now contending that the claims were fully litigated in arbitration. They further contend that Defendants bear the burden of proving the existence of a valid arbitration agreement.

Plaintiffs, however, misconstrue Defendants' position. The Stinson Defendants are not arguing that the legal malpractice claims were fully litigated in the arbitration. They are not asserting preclusion under res judicata or collateral estoppel. Instead, the Stinson Defendants argue that waiver principles apply.

Turning to waiver law in the arbitration context, a party preserves an objection to arbitration, even if they follow through with the arbitration, by consistently maintaining an objection to the scope of arbitration. *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007). The Tenth Circuit applies its usual rules regarding waiver and estoppel "to prevent a party from complaining about the enforceability of an arbitration agreement if he already has fully participated in arbitration without any relevant objection." *Id.* This waiver rule "is important to advance the goals of arbitration as an efficient method of dispute resolution for which parties may contract in advance." *Id.* The Tenth Circuit explained that it would be unjust to allow a party to voluntarily participate in the arbitration only to later challenge its legitimacy after getting unfavorable results. *Id.*

According to the Stinson Defendants, Belgravia waived its arguments against the validity and enforceability of the arbitration clause by participating in the arbitration and taking a contrary position in the arbitration to their current assertions. Indeed, in the arbitration, Belgravia filed a motion to abate proceedings wherein it said, "Belgravia has asserted affirmative defenses and counterclaims stemming from Stinson's mishandling of that very same litigation for which fees are sought." (Mot. to Abate 6, Dkt. No. 3-6.) Belgravia asserted that, under Texas law, a lawyer's alleged malpractice, whether it be negligence or breach of fiduciary duty, is central to a client's defense to his attorney's fee claims. (*Id.* at 6-7.) Belgravia expressly argued that its counterclaims were "inextricably intertwined" with Stinson's fee claim, and that under Texas law, "Belgravia's claims regarding Stinson's mishandling of the Underlying Litigation are compulsory counterclaims which must be adjudicated alongside Stinson's fee claim." (*Id.* at 7.) Belgravia proceeded to request a stay of the arbitration until the underlying litigation concludes because their claims and defenses were not yet ripe. (*See id.* at 8.)

Belgravia thus took the position in the arbitration that it had asserted malpractice counterclaims in the arbitration and that those were compulsory counterclaims that the arbitrator must consider alongside the fee dispute. That position is directly contrary to the arguments they are currently making that the claims fall outside the scope of the arbitration provision.

It is true that the parties were proceeding to final hearing limited to the issues of fees. (Moheban Supp. Decl. ¶ 5, Dkt. No. 34-4.) The Stinson Defendants successfully argued in the arbitration that Belgravia never pled malpractice claims; they only asserted counterclaims for overbilling; and Belgravia was only belatedly, a month before the arbitration, asserting that their claims and defenses depended on the underlying litigation. (Defs.' Ex. H, Dkt. No. 34-2.) The arbitrator agreed, denied the motion to abate, and ruled that Belgravia had not asserted malpractice claims in the arbitration. (*See* Def.'s Ex. I, Dkt. No. 34-3; Moheban Supp. Decl. ¶ 5, Dkt. No. 34-4.) So, Belgravia is correct that their malpractice claims were not litigated in the arbitration. That, however, does not change the fact that Belgravia attempted to benefit from the arbitration agreement by asserting malpractice claims as compulsory counterclaims in the arbitration and arguing that the claims should be tried alongside the fee dispute.

Next, Belgravia contends that the malpractice claims were not compulsory counterclaims because they were not yet ripe at the time of the arbitration. In support, Belgravia relies on *Brunacini v. Kavanagh*, 1993-NMCA-157, 869 P.2d 821, in which the New Mexico Court of Appeals confirmed that when a law firm files an action for legal fees, a client must assert as a counterclaim any claim for legal malpractice against the firm, so long as the counterclaim has matured at the time the client serves its answer. *See id.* ¶¶ 16-17. Even assuming Belgravia is correct that their malpractice claims do not fully ripen until the PolyNatura litigation concludes, Belgravia was seeking to abate the arbitration. It asserted that its malpractice defenses and

counterclaims should be adjudicated along with the fee claim *in the arbitration*, just at a later time. It thus invoked the benefits of the arbitration provision. Belgravia's prior position is at odds with its current positions claiming that the malpractice claims are outside the scope of the arbitration provision in the contract and are invalid.

    The Court finds that the waiver and estoppel rules apply to preclude Belgravia from now arguing that their malpractice claims fall outside the scope of the arbitration agreement and that the arbitration agreement is invalid. *Cf. Lewis*, 500 F.3d at 1149 ("[O]ur usual rules regarding waiver and estoppel apply to prevent a party from complaining about the enforceability of an arbitration agreement if he already has fully participated in arbitration without any relevant objection."); *Fortune, Alsweet and Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356-57 (9th Cir. 1983) (concluding that party waived right to object to arbitration and that party's conduct in case demonstrated intent to arbitrate his dispute where he voluntarily participated in arbitration over period of several months, and only challenged legitimacy of arbitration shortly before arbitrator announced decision); *Damon v. StrucSure Home Warranty, LLC*, 2014-NMCA-116, ¶ 16, 338 P.3d 123 ("[W]e hold that Plaintiffs, having voluntarily chosen to seek a direct benefit from the warranty by attempting to enforce its terms against StrucSure, may not now seek to repudiate one of the warranty's provisions. If Plaintiffs wished to exempt themselves from the arbitration clause, they could have chosen not to claim and enforce any of the rights under the warranty. However, once Plaintiffs voluntarily sought to embrace and invoke the benefits created by the warranty, they could not avoid the arbitration provision in the warranty.").

    In sum, Defendants have established the existence of an arbitration agreement between the parties. By participating in the arbitration, Plaintiffs waived any argument that an arbitration agreement did not exist. Moreover, Plaintiffs cannot invalidate or avoid the scope of an arbitration

agreement of which, by their conduct, they attempted to reap the benefits when they asserted that their malpractice counterclaims must be adjudicated alongside the fee claim in the arbitration.

      The Court similarly finds that Plaintiffs, through their conduct, waived an argument that the misrepresentation and unfair trade practices claims likewise were not directly or indirectly related to the fee claims. Plaintiffs argued in the arbitration that a law firm's entitlement to attorney's fees depends on the outcome of the client's claims of legal negligence, fraud, and breach of fiduciary duty. (Mot. to Abate 7, Dkt. No. 3-6.) They also asserted that their "claims regarding Stinson's mishandling of the Underlying Litigation are compulsory counterclaims which must be adjudicated alongside Stinson's fee claim." (*Id.*) Belgravia's negligent/intentional misrepresentation and unfair trade practices claims are indistinguishable from the malpractice claims in terms of whether they indirectly or directly relate to the fee claims. (*See* First Am. Compl. ¶¶ 46, 49, Dkt. No. 20-3 (asserting in Count III that the Stinson Defendants' "misrepresentations and omissions resulted in substantive failures to advance Belgravia's legal claims and safeguard its interests," and that "they abandoned essential litigation tasks and strategies that Lackey himself had identified as critical to the case's success, leaving Belgravia in a disadvantaged position"; and seeking damages for "additional litigation costs, procedural setbacks, and a weakened legal position"); *see id.* ¶¶ 60-61 (alleging in Count V that Defendants "misrepresented their qualifications and experience, misled Belgravia regarding litigation strategy and assessment of its claims, concealed material conflicts of interest that compromised their ability to provide competent legal services, and made materially false and misleading representations about the handling and progress of the litigation"; and seeking damages for "losses in the value of their claims, additional litigation costs, and other financial harm resulting from Defendants' mismanagement and deceptive conduct").

### B. Claims against Lackey are likewise subject to arbitration.

The Stinson Defendants contend that the claims against Lackey must be arbitrated, because he was an agent of Stinson and a law firm acts only through its employees. Plaintiffs did not dispute in their response that the arbitration agreement extended to Defendant Lackey as an employee and agent of the Stinson law firm. The Court thus finds that Plaintiff waived any argument to the contrary.

Moreover, numerous circuits "have held that an agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 11 (1st Cir. 2014) (and cited cases). "When the non-signatory party is an employee of the signatory corporation *and* the underlying action in the dispute was undertaken in the course of the employee's employment, these circuits have fashioned, uniformly, a federal rule designed to protect the federal policy favoring arbitration." *Id.* As the circuits explain, a firm can only operate through its employees, so an arbitration agreement would be meaningless if it did not extend to the employees. *See id.* Consequently, Plaintiffs' claims against Lackey are subject to arbitration.

### C. The Court will compel arbitration and stay this case.

Under Section 3 of the FAA, if a case is brought on an issue referable to arbitration, the Court must stay a trial of the action until the arbitration has been had. 9 U.S.C. § 3. Accordingly, the Court will grant the Stinson Defendants' motion to compel arbitration and will stay this case until the conclusion of the arbitration.

### IV.    DEFENDANT SNELL'S REQUEST TO STAY

Defendant Snell moved in its response to stay this case until both the arbitration and the PolyNatura Lawsuit are resolved. (Snell's Resp. 1, Dkt. No. 26.) As discussed, the Court will stay this case until the arbitration is resolved against the Stinson Defendants.

As for the request to stay until the PolyNatura Lawsuit is completed, the request may become moot if the arbitration concludes after the February 2026 trial in the Polynatura case. Because the Court is entering a stay, the Court finds this additional ruling is unnecessary at this time and will deny it without prejudice. Moreover, Snell's request was made in its response to the motion to compel, and neither Plaintiffs nor the Stinson Defendants addressed whether the case should be stayed until the underlying litigation concludes. Should the arbitration conclude before the PolyNatura Lawsuit, Defendant Snell may re-file its motion to stay, and the Court can resolve it with the benefit of full briefing based on the updated status of the case.

**IT IS THEREFORE ORDERED** that Defendants Stinson, LLP and Paul Lackey's *Motion to Compel Arbitration and Stay Proceedings* (**Dkt. No. 3**) is **GRANTED**. Plaintiffs' claims against Defendants Stinson and Lackey are **REFERRED** to arbitration. This action is **STAYED** pending the conclusion of the arbitration proceedings.

_____
SENIOR UNITED STATES DISTRICT JUDGE